IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAUL RUEGG,

        Plaintiff,                    ORDER AND OPINION

    v.                                        09-cv-22-slc

BRADLEY HOMPE, Warden,
    Stanley Correctional Institution;
TIM HAINES, Deputy Warden,
    Stanley Correctional Institution;
CHERYL WEBSTER, Unit Manager,
    Stanley Correctional Institution; and
JEAN VOEKS, Director, Health Services Unit,
    Stanley Correctional Institution,

        Defendants.

---

In this lawsuit brought pursuant to 42 U.S.C. § 1983, plaintiff Paul Ruegg alleges that defendants Bradley Hompe, Tim Haines, Cheryl Webster and Jean Voeks violated his Eighth Amendment rights when they took away his double mattress, which a doctor had recommended for plaintiff's severe back and leg problems. Before the court is defendants' motion for summary judgment on the grounds that defendants Haines and Webster had no personal involvement in the decision to remove plaintiff's extra mattress, that plaintiff has failed to show that the remaining defendants acted with deliberate indifference to his serious medical need and, in the alternative, that all of the defendants are entitled to qualified immunity. Dkt. 18.

Before turning to defendants' motion, I need to address a preliminary procedural matter Back in April, 2009, Plaintiff received instructions on filing submissions related to summary judgment. <u>Procedure to be Followed on Motions for Summary Judgment and Helpful Tips to Filing a Summary Judgment Motion in Cases Assigned to Judge Barbara B. Crabb</u>, attached to the pretrial conference order, dkt. 14. As explained in the instructions, a party opposing summary judgment must file a brief with opposing legal arguments, a response to the movant's proposed

findings of fact and evidentiary materials to support the factual propositions. Procedure, II.A.1-3. The party is to propose each fact in a separate paragraph and supported by a reference to supporting evidence. Procedure, II.D.1-2. Plaintiff failed to comply with these procedural rules. He did not file a brief with opposing legal arguments or supporting evidentiary materials and he did not respond to defendants' proposed findings of fact. Although plaintiff requested and received an extension of time to file his responsive documents, *see* dkts. 26 & 27, he never filed anything. Therefore, I must conclude that the facts proposed by defendants are undisputed to the extent that they are supported by admissible evidence. This leads me to conclude that, because plaintiff has not offered evidence to support his claim that defendants were deliberately indifferent to his serious medical needs, the defendants are entitled to summary for judgment in their favor.

From defendants' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Paul Ruegg has been incarcerated at the Stanley Correctional Institution since November 29, 2007. Defendant Bradley Hompe currently is the deputy warden at Redgranite Correctional Institution. Between September 2007 and April 2009, Hompe was the warden at Stanley Correctional Institution, where he was responsible for the overall operation and administration of the prison and the security and safety of the inmates. Defendant Jean Ann Voeks has been employed as the Health Services Unit Manager and Nursing Supervisor at the Stanley Correctional Institution since April 2007. In that capacity, Voeks oversees the delivery of medical services and provides administrative support to physicians and other medical staff at the prison. Defendant Tim Haines has been the deputy warden at the Stanley Correctional Institution since February 2008. He assists in developing, implementing and administering the

institution's security, treatment and support services. Defendant Cheryl Webster was a unit manager at the Stanley Correctional Institution from January 2003 to July 2008, after which she became a program director. As a unit manager, Webster oversaw the general operations of the housing unit assigned to her and the security, treatment and living conditions of the inmates, including plaintiff, who were housed on her unit.

Health care practitioners at the institution rely on Policy and Procedure No. 300:07, "Medical/Dental Restrictions/Special Needs" (effective August 26, 2005), to determine whether an inmate has a special need. The policy requires the practitioners to evaluate security restrictions and possible alternatives where possible and refer any unresolved security concerns to the warden. Pursuant to the policy, double mattresses were necessary for those inmates with the following conditions: decubitus ulcer or therapy, third-degree burns, hip or knee replacement, severe degenerative joint disease, orthopedic injury or skeletal trauma and pregnancy of 20 weeks' gestation or more. Although on January 24, 2008, a physician wrote an order for plaintiff to receive an extra mattress, the physician did not give a reason for the order or list any diagnosis meeting the state's policy criteria. Medical progress notes from the same day list plaintiff's diagnoses as plantar fasciitis and Achilles tendinitis. A month later, on February 28, 2008, plaintiff complained of ankle, knee and back pain and had a noticeable limp.

In the spring of 2008, Hompe held a meeting with institution staff members to discuss the prevalence of inmates using double mattresses. In September 2007, over 400 inmates used double mattresses because the mattresses were thin. In April 2008, Hompe directed Voeks and the health services unit staff to evaluate the needs of inmates using double mattresses to determine whether each had a legitimate medical need for a double mattress. Additionally, Voeks and Holly

Gunderson, a Department of Corrections nursing coordinator, evaluated a sampling of the mattresses being used by inmates in various housing units at the institution.

Although thicker, higher quality mattresses had been distributed among the institutions in 2002 or 2003, Stanley Correctional Institution had just opened at that time and still had thin mattresses.  Defendant Voeks learned that the covers of the older, thinner mattresses were susceptible to tearing and the inner core was likely to break down more quickly than those in the newer mattresses.  This created a security concern in that inmates could hide contraband within the core of the older mattresses or between mattresses.  As a result, in April 2008, defendant Hompe ordered extra mattresses removed unless an inmate had a medical need for one.  Defendant Haines was aware of this decision.  Health Services Unit staff determined that the majority of inmates who had double mattresses did not meet the policy criteria.  The thin mattresses at the Stanley Correctional Institution were gradually replaced with the thicker, higher quality mattresses.

In April 2008, defendant Voeks circulated two memos clarifying and explaining the policy regarding extra pillows, mattresses and other comfort items.  She posted the memos for all inmates to view.  Gunderson created a sticker that was placed on all health service requests for comfort items.

In an August 8, 2008 order, a physician ordered that plaintiff's extra mattress be "discontinued."  Neither defendant Haines nor defendant Webster had any personal involvement in the decision to remove the double mattresses at the institution or the decision to replace plaintiff's double mattress with a single one.

On August 10, 2008, plaintiff submitted a health service request to defendant Voeks, complaining that officers had removed his extra mattress.  He asked to see a physician and claimed

4

he needed x-rays for his back pain. Voeks responded in writing the next day, explaining that under the double mattress policy, plaintiff did not have a health condition warranting an extra mattress. Voeks scheduled an appointment for plaintiff for September 25, 2008, making clear that he might have to pay for the visit and might not receive the tests that he requested. Plaintiff failed to attend the clinic visit.

OPINION

A. Summary Judgment Standard

The purpose of summary judgment is to determine whether the parties have adduced enough evidence to support a jury verdict in their favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In a civil suit, the plaintiff has the burden to prove his claim. It is not defendants' burden to disprove it. Therefore, it is plaintiff who must show what evidence he has that would convince a trier of fact to accept his version of the events. Schacht v. Wisconsin Dept. of Corrections, 175 F.3d 497, 504 (7th Cir. 1999). The court must view all facts and draw all inferences in the light most favorable to the non-moving party. Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003). However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its favor. Hunter v. Amin, 583 F.3d 486, 489 (7th Cir. 2009); Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005). If the plaintiff fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, summary judgment must be granted to the defendant. Celotex, 477 U.S. at 323.

B.  Eighth Amendment

Prison officials have a duty under the Eighth Amendment "'to provide medical care for those whom it is punishing by incarceration.'"  Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir. 1996) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  In order to survive summary judgment on his Eighth Amendment claim, plaintiff must establish that he had "an objectively serious medical need, and that [defendants were] deliberately indifferent to it."  Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008); see also Estelle, 429 U.S. at 104-05.

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a layperson.  Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006) (citing Zentmyer v. Kendall County, 220 F.3d 805, 810 (7th Cir. 2000)).  A medical need may be serious if it causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or subjects the detainee to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825, 828 (1994).  "Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  Thus, plaintiff's claims are properly analyzed by answering three questions:  1) Did plaintiff had a serious medical need? 2) Did defendants knew that plaintiff needed care (or in this case, a double mattress)? 3) Despite their awareness of plaintiff's need, did defendants fail to take reasonable measures to provide the necessary care?

Plaintiff alleges in his amended complaint, *see* dkt. 5, that he has severe back and leg problems and has experienced severe back pain and constant leg numbness since his extra mattress was removed.  However, the undisputed facts show that plaintiff was given a double mattress for an unknown reason.  He has never received a diagnosis of back or leg problems or any other

6

condition that would require him to sleep on an extra mattress. The only reference in the record to problems of this kind was on February 28, 2008, when plaintiff complained of ankle, knee and back pain and showed a noticeable limp. However, this was after the physician had ordered him a double mattress. Given the prevalence of inmates having two mattresses at the time, it is just as likely that plaintiff received an extra mattress for comfort purposes rather than for any serious medical problem. In fact, defendant Voeck's survey of the institution revealed that a majority of the inmates with two mattresses did not have a medical need for them.

Even assuming that plaintiff has a severe medical condition, there is no indication that defendants were aware that he needed a double mattress. Under prison policy, extra mattresses were provided only for specific conditions, none of which plaintiff had. Nothing in the record indicates that plaintiff informed defendants of his back and leg pain until *after* his extra mattress was removed in August 2008. Although plaintiff alleges that his mattress was removed without checking with his physician, that is not true. A physician discontinued the recommendation for plaintiff's extra mattress on August 8, 2008. Plaintiff has not established that this decision was medically inappropriate. Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008) (plaintiff must show that doctor acted with such blatant inappropriateness as to imply actions or omissions were not actually based on medical judgment); Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) (prisoner's dissatisfaction with doctor's prescribed course of treatment does not give rise to constitutional claim). Nor was it unreasonable for defendants to rely on that finding in removing plaintiff's extra mattress. Johnson v. Snyder, 444 F.3d 579, 586 (7th Cir. 2006) (affirming summary judgment for health care administrator who relied on plaintiff's medical record and doctor's treatment decisions); Johnson v. Doughty, 433 F.3d 1001, 1015 (7th Cir. 2006)

(affirming directed verdict for health care administrator who responded appropriately to inmate's complaints of worsening symptoms and relied reasonably on doctor's professional opinions). Finally, after plaintiff complained, defendant Voeks acted reasonably and set up a medical evaluation for plaintiff. Plaintiff never showed up for that appointment.

No reasonable jury could find from these undisputed facts that defendants' failure to do more for plaintiff was reckless. Because there is no evidence from which a reasonable jury could infer that any of the defendants acted with deliberate indifference to plaintiff's serious medical needs, defendants are entitled to summary judgment. Accordingly, it is unnecessary to consider defendants' remaining arguments with respect to Haines's and Webster's personal involvement or qualified immunity. Defendants' motion for summary judgment will be granted.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Bradley Hompe, Tim Haines, Cheryl Webster and Jean Voeks, dkt. #18, is GRANTED. The clerk of the court is directed to enter judgment for defendants and close this case.

Entered this 20th day of November, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge